# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| HANGER SOLUTIONS, LLC,<br>    Plaintiff,<br><br>v.<br><br>SQUARESPACE, INC.,<br>    Defendant. | CIVIL ACTION NO. 1:21-cv-00774-LPS<br><br>**Chief Judge Leonard P. Stark** |

**PLAINTIFF'S OPPOSITION TO SQUARESPACE, INC.'S MOTION TO STAY**
**(Dkt. No. 17)**

Plaintiff HANGER SOLUTIONS, LLC ("Hanger") files its opposition to the Motion to Stay filed by Defendant SQUARESPACE, INC. ("Squarespace") on December 7, 2021, (*see* D.I. 17 and D.I. 18, the "Brief") (collectively, the "Motion to Stay"), such Motion to Stay being predicated on the outcome of a Rule 12(c) motion that it filed in a separate case that is also pending in this Court, entitled *DataCloud Technologies, LLC v. Squarespace, Inc.*, D. Del. No. 21-cv-00164-LPS (the "DataCloud Action").

**TABLE OF CONTENTS**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................................... 1

II.  NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 2

III. STATEMENT OF FACTS ................................................................................................... 3

IV.  ARGUMENT ........................................................................................................................ 4

    A.  THIS CASE AND THE DATACLOUD ACTION ARE IN DIFFERENT PROCEDURAL POSTURES. ................................................................................................................ 5

    B.  THE FACTORS THIS COURT USES TO EVALUATE DO NOT SUPPORT A MOTION TO STAY. ................................................................Error! Bookmark not defined.

        1. No Simplification of The Issues Will Occur Because Different Patents Are At Issue In The DataCloud Action. ....................Error! Bookmark not defined.
        2. The Stage Of The Litigation. ..............................Error! Bookmark not defined.
        3. The Potential For Prejudice. ...............................Error! Bookmark not defined.

V.   CONCLUSION ...................................................................Error! Bookmark not defined.

# TABLE OF AUTHORITIES

**Cases**

*Clinton v. Jones,* 520 U.S 681 (1997) .................................................................................... 2, 4

*Dentsply Int'l Inc. v. Kerr Mfg. Co.,* 734 F.Supp. 656 (D. Del. 1990) .................................. 2, 4, 7

*Enhanced Sec. Research, LLC v. Cisco Sys., Inc.,* No. 09-571-JJF, 2010 U.S. Dist. LEXIS 63789 (D. Del. June 25, 2010) ................................................................................................ 5

*Hemostemix, Inc. v. Accudata Sols., Inc.,* No. 20-881-RGA, 2021 U.S. Dist. LEXIS 60754 (D. Del. Mar. 30, 2021) ........................................................................................................ 6

*Landis v. N. Am. Co.,* 299 U.S. 248 (1936) ............................................................................ 2, 4

*Murata Machinery USA v. Daifuku Co., Ltd.,* 830 F.3d 1357 (Fed. Cir. 2016) ...................... 2, 4

*SCA Hygiene Prods. Aktiebolag v. Tarzana Enters., LLC,* No. CV 17-04395-AB (JPRx), 2017 U.S. Dist. LEXIS 218330 (C.D. Cal. Sep. 27, 2017) ................................................... 8

*UCB, Inc. v. Zydus Pharms. (USA) Inc.,* No. 16-903-LPS, 2017 U.S. Dist. LEXIS 159722 (D. Del. Sep. 28, 2017) ..................................................................................................... 5, 7

**Statutes**

35 U.S.C. § 112 ¶ 1 ................................................................................................................ 1, 4, 5

35 U.S.C. § 112 ¶ 2 ................................................................................................................ 1, 4, 5

35 U.S.C. §282(a) ......................................................................................................................... 6

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 7

Fed. R. Civ. P. 12(c) .................................................................................................................. 1, 7

Fed. R. Civ. P. 7.1 ......................................................................................................................... 4

L.R. 3.1(b) ................................................................................................................................. 2, 3

I. **INTRODUCTION AND SUMMARY OF ARGUMENT**

Squarespace seeks a stay of this case pending the outcome of a Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) it filed in a ***different case***[1] against a ***different plaintiff***[2] in which it attacks ***different patents***.[3]  In support its Motion to Stay here, Squarespace argues that this case and the DataCloud Action are related because: (1) the same products and services are allegedly accused of infringement in both lawsuits; (2) Squarespace apparently intends to raise the same invalidity defenses in both cases; and (3) both cases share the same parent corporation.[4]  *See* D.I. 19 at p.1.

But even a cursory review of the two cases shows that these statements do not reflect reality.  In fact, the only thing that is accurate in Squarespace's Motion is that Hanger and DataCloud have the same corporate parent.  The patents asserted in this Action and the DataCloud Action are not the same (nor even related).  The products are not the same—in this action, Squarespace's "website design and hosting platform and tools" are accused of infringement, whereas in the DataCloud Action, Squarespace's "website design/website builder product," its Squarespace Application for Android, its Squarespace Website Hosting, and its Contributor Application are accused of infringement  And the invalidity arguments that Squarespace "intends to raise" are only identical in the sense that they invoke 35 U.S.C. § 112 ¶ 1 and 35 U.S.C. § 112 ¶ 2 as their statutory basis, which makes the invalidity defenses as between this action and the

---

[1] *DataCloud Technologies, LLC v. Squarespace, Inc.,* D. Del. No. 21-cv-00164-LPS (the. "DataCloud Action")

[2] DataCloud Technologies, LLC ("DataCloud")

[3] U.S. Patent Nos. 6,560,613, 6,651,063, 8,607,139, and 8,762,498 ("the DataCloud Patents")

[4] Brainbox Innovations, LLC ("Brainbox").

DataCloud Action no more "identical" than as between this action and more than half of the patent litigations in the United States.

Squarespace has grossly overstated the alleged overlap between these cases. There is no substantive overlap between these cases, so the stay will not simplify issues for trial and could only prejudice Hanger in enforcing its right by tying it up waiting for a motion in an unrelated case to be resolved. *See Landis v. N. Am. Co.,* 299 U.S. 248, 254-255 (1936). For these reasons, Squarespace's stated rationale does not support a stay, and it further does not meet the criteria this Court utilizes in evaluating a motion to stay. The Court should therefore decline to employ its discretion to stay this case. *See Clinton v. Jones,* 520 U.S 681, 706-707 (1997); *Murata Machinery USA v. Daifuku Co., Ltd.,* 830 F.3d 1357, 1361-1362 (Fed. Cir. 2016); *see also Dentsply Int'l Inc. v. Kerr Mfg. Co.,* 734 F.Supp. 656, 658 (D. Del. 1990). The Motion should be denied.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

The Complaint was filed on May 27, 2021, and it was served on Squarespace on June 4, 2021. D.I. 1, D.I. 8. On June 2, 2021, counsel for Squarespace sent a letter to the Court claiming that this case was related to the DataCloud action. D.I. 6. That same day, counsel for Hanger responded with a letter listing four reasons why the cases were not "related" under L.R. 3.1(b). D.I. 7. After receiving an extension of the due date for its response to the Complaint (Order, dated June 11, 2021, granting Joint Stipulation at D.I. 11), Squarespace filed an Answer on July 20, 2021 which contained no counterclaims. D.I. 14.

Pursuant to the Court's November 16, 2021, Order (D.I. 15), the Parties filed a Proposed Scheduling Order which specifies that Squarespace shall produce "core technical documents" by January 19, 2022 (D.I. 20). Notably, discovery will open within thirty days from the date the Court

enters the Scheduling Order. Squarespace's Motion to Stay was filed the same day that the Parties filed the Proposed Scheduling Order. D.I. 17.

In the DataCloud action, the Court has recently scheduled oral argument for January 20, 2022, on Squarespace's Motion for Judgment on the Pleadings. DataCloud action, D.I. 39.

### III. STATEMENT OF FACTS

1. This action and the DataCloud Action are not related because they involve different patents, covering different inventions, with different inventors, and that are from different patent families. *See* D. Del. LR 3.1(b)(3). This action involves U.S. Patent Nos. 6,430,623 (the "'623 Patent"), 6,609,159 (the "'159 Patent"), and 6,772,227 (the "'227 Patent") (collectively, the "Asserted Hanger Patents"). *See* D.I. 1. The DataCloud Action, on the other hand, involves U.S. Patent Nos. 6,560,613 (the "'613 Patent"), 6,651,063 (the "'063 Patent"), 8,607,139 (the "'139 Patent"), 8,762,498 (the "'498 Patent"), 7,209,959 (the "'959 Patent"), 7,246,351 (the "'351 Patent"), and 7,398,298, (the "'298 Patent") (collectively, the "Asserted DataCloud Patents").

2. The systems accused of infringement in this action and the DataCloud Action are not the same. In this action, Squarespace's "website design and hosting platform and tools" are accused of infringement. *See* D.I. 1, at ¶¶19, 23-25, 30-32, and 37-39. In the DataCloud Action, however, Squarespace's "website design/website builder product," its Squarespace Application for Android, its Squarespace Website Hosting, and its Contributor Application are accused of infringement. *See* DataCloud Action, D.I. 21, at ¶¶ 25, 33, 41, 55, 60-61, 71, and 83-83. Moreover, different and discrete technical elements of these systems are implicated by each of the asserted patents. As a result of the fact that the cases involve disparate patents and different products, the cases do not involve "substantially the same . . . property." *See* D. Del. LR 3.1(b)(2).

3. The patents in this action and the DataCloud Action are owned by different parties—Hanger, on the one hand, and DataCloud, on the other. *See* D. Del. LR 3.1(b)(2)

(requiring "the same or substantially the same parties"). While both DataCloud and Hanger share Brainbox Innovations, LLC as a corporate parent, as indicated in the respective Fed. R. Civ. P. 7.1 disclosures (*see* D.I. 4; DataCloud Action, D.I. 4), that does not make them "substantially the same parties."

        4.     The invalidity arguments between this action and the DataCloud Action are "identical" only in that they rely on the same statutory basis—35 U.S.C. § 112 ¶¶ 1 and 2. But if that were the proper analysis for whether a defense is "identical" then more than half of the patent litigations in the United States assert "identical" invalidity defenses. Although it is theoretically possible that, in a broad sense, similar invalidity arguments could be raised as to each of the patents in each of the lawsuits, the patents in the two lawsuits are wholly unrelated, so it is implausible that "Squarespace's affirmative defenses against all asserted patent claims in both cases involve ***an identical allegation of invalidity***. D.I. 18, p. 5 (emphasis added).

## IV.    ARGUMENT

Squarespace's argument assumes that a grant of the 12(c) Motion in the *DataCloud* action would be dispositive here. For several reasons, this is not true. Whether to stay litigation is a matter left to the Court's discretion. *See Clinton,* 520 U.S. at 706-707 ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.") (citing *Landis,* 299 U.S. at 254); *Murata,* 830 F.3d at 1361-1362; *see also Dentsply,* 734 F.Supp. at 658 ("In exercising this discretion, the Court must weigh the competing interests of the parties and attempt to maintain an even balance."). Courts typically rely on three factors in determining whether a stay is appropriate: (1) whether a stay will simplify the issues for trial, (2) whether discovery is complete and a trial date has been set, and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *See Landis,* 299 U.S. at 254-55. Inherent to this evaluation is whether the moving party would face hardship or inequity in going

forward with the litigation. *See UCB, Inc. v. Zydus Pharms. (USA) Inc.,* No. 16-903-LPS, 2017 U.S. Dist. LEXIS 159722, *3 (D. Del. Sep. 28, 2017) (citing *Enhanced Sec. Research, LLC v. Cisco Sys., Inc.,* No. 09-571-JJF, 2010 U.S. Dist. LEXIS 63789, *11-*12 (D. Del. June 25, 2010)).

### A. THIS CASE AND THE DATACLOUD ACTION ARE IN DIFFERENT PROCEDURAL POSTURES.

An obvious fallacy of Squarespace's position is that it has raised the same invalidity argument it has made in the DataCloud Action. This is not true. In the DataCloud Action, Squarespace's 12(c) Motion seeks dismissal based on its assertion that the asserted claims are indefinite pursuant to 35 U.S.C. §112 ¶ 2. *See* DataCloud Action, D.I. 25. In this case, almost six months ago, Squarespace filed its Answer and affirmative defenses which included defenses raised under 35 U.S.C. §112, notably without any counterclaims. *See* D.I. 14. In other words Squarespace asks this Court to stay this case based on arguments it *might* pursue *if* they are successful in the DataCloud Action.

Moreover, the 12(c) Motion that Squarespace filed in the DataCloud Action raised an unusual theory that is not supported by current case law. Squarespace's indefiniteness argument under 35 U.S.C. §112 ¶ 2 is based on case law that is no longer generally accepted. *See* DataCloud Action, D.I. 27, ¶IV.A. Even if there is merit to Squarespace's indefiniteness argument, it is premature to raise it at the pleadings stage of the case. *See* DataCloud Action, D.I. 27, ¶IV.B. Moreover, Squarespace's analysis consisted of boilerplate language without meaningful analysis. *See* DataCloud Action, D.I. 27, ¶IV.C. As such, not only is Squarespace's Motion to Stay this case based upon speculation that the DataCloud Action is dispositive, which as explained *infra* is not true, it is also based upon wishful thinking.

Finally, even if the invalidity arguments that Squarespace "intends to raise" are identical at the highest of levels, meaning, in the sense that they invoke 35 U.S.C. § 112 ¶¶ 1 and 2 as their statutory basis. That does not make the invalidity arguments raised in this action and the

DataCloud Action "identical." Half of the defendants in patent cases around the country raise these statutory bases in arguing that the relevant patents are invalid.

### B. THE FACTORS THIS COURT USES TO EVALUATE DO NOT SUPPORT A MOTION TO STAY.

Put simply, the reasons to grant a stay in this case are no more compelling than if Squarespace had argued that this case should be stayed in light of an *Apple, Inc. v. Samsung Electronics Co.* case filed in this District. There is simply no reason to do it. On the facts here, Squarespace's assertion that all three of the factors for evaluating stay motions "weigh heavily in favor of staying this action pending resolution of Defendant's Motion for Judgment on the Pleadings in the *DataCloud* action" are both misplaced and inaccurate.

#### 1. There Will Be No Issue Simplification Because Different Products Are Accused of Infringing Different Patents Owned by Different Entities in The Actions.

Squarespace's Motion to Stay is based primarily on the faulty premise that a favorable decision in the *DataCloud* action would be dispositive here. Hanger has asserted claims of patents that are different from the claims of the patents asserted in the *DataCloud* action. The claims of the patents asserted here are presumed to be valid. *See* 35 U.S.C. §282(a). As no decision has been issued in the *DataCloud* action, it is pure speculation at this point that Squarespace is even correct in its theory of invalidity. Moreover, Squarespace has made no demonstration that the claims asserted here are related to or similar to those raised in the *DataCloud* action.[5] At this point, it is impossible to know if the DataCloud action is relevant here. *See Hemostemix, Inc. v. Accudata Sols., Inc.,* No. 20-881-RGA, 2021 U.S. Dist. LEXIS 60754, *6-*7 (D. Del. Mar. 30, 2021) (motion to stay denied where issues were not substantially the same). This factor does to support the Motion to Stay at all, contrary to the speculative analysis provided by Squarespace.

---

[5] Its allegations raised in its affirmative defenses (D.I. 14) are just that, allegations.

### 2. The Stage Of The Litigation.

This case is in its early stages. Squarespace has filed its Answer, notably without counterclaims. *See* D.I. 14.[6] At this Court's direction (D.I. 15), the Parties have recently submitted a proposed scheduling order for this case (D.I. 20). This factor does not support the denial of a stay, but it does not override the other factors that do disfavor a stay.

### 3. The Potential For Prejudice.

Although the potential for prejudice to Hanger is slight, it is real. Any delay to the case will result in harm to Hanger's ability to enforce its patent rights against Squarespace. *See Dentsply Int'l Inc.,* 734 F.Supp. at 686 ("Any delay in the litigation … will forestall the trial date … and result in prejudice to [Plaintiff]"). In addition, the delay will impair Hanger's ability to enforce its patent rights against other parties. As a small company with limited resources, Hanger must expend its resources carefully. Delay here delays Hanger's ability to identify other infringers because of the cloud over its portfolio if it must wait for a decision in this case. Granting the Motion to Stay gives credence to a theory of invalidity that has not actually been asserted here in any motion. Squarespace could have filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c) at the beginning of last year—when it did in the DataCloud Action—to test its theory of why it believes the asserted patents are invalid, but it neglected to do that.

More important is that not granting the Motion to Stay will result in no real harm to Squarespace. This Court considers the motivation of the movant when considering a Motion to Stay. *See UCB, Inc.,* 2017 U.S. Dist. LEXIS 159722 at *3. Squarespace points only to the cost of

---

[6] Squarespace's first three affirmative defenses attacking the validity of the claims of the three Asserted Patents are uncharacteristically detailed. Its choice to not assert this defense as counterclaims suggests a tactical maneuver to prevent Hanger from providing a rejoinder to the allegations at the pleading stage.

defending itself against claims of infringement, but this does not qualify as harm that justifies a stay, absent other extenuating circumstances. Squarespace's theory of invalidity was raised in the *DataCloud* action more than four months ago, yet Squarespace has waited until the Court requested that Parties file a proposed scheduling order to file its Motion to Stay.

Squarespace contends that it "should not be required to spend additional amounts on this action, especially when some of this work is likely to be rendered unnecessary depending on the outcome of the dispositive motion pending in the *DataCloud* action." D.I. 18 at p.10. There are at least two misleading statements contained in this assertion. First, as discussed *supra*, because different patents are involved in the two cases, the outcome of the motions practice in the *DataCloud* action will not be dispositive here. Given the novelty of Squarespace's invalidity theory as well as the poor chances of its success, the impact on this case is likely to be nil. Second, Squarespace has apparently expended little on this case given the stage of the proceedings and the lack of counterclaims. Nor has Squarespace petitioned for *inter partes* review ("IPR"). Most importantly, Squarespace has not provided any evidence of hardship associated with defending itself. *Cf. SCA Hygiene Prods. Aktiebolag v. Tarzana Enters., LLC,* No. CV 17-04395-AB (JPRx), 2017 U.S. Dist. LEXIS 218330, *13 (C.D. Cal. Sep. 27, 2017) (declaration attached to motion to stay indicating hardship in having to defend IPR and continue litigating supported granting stay). As for alleged prejudice with respect to fears of duplicative discovery, such requests and productions could easily be coordinated given that counsel in this case and the *DataCloud* action are the same on both sides. Finally, the at least 4-month delay in bringing the Motion to Stay (which probably would not have been filed if the Court had not ordered the Parties to file a Proposed Scheduling Order) should be considered. *See SCA Hygiene Prods. Aktiebolag*, 2017

U.S. Dist. LEXIS 218330 at *12 (timing of stay request with respect to circumstances may be considered). This factor does not support a stay.

## V. CONCLUSION

For the foregoing reasons, Squarespace's Motion to Stay should be denied.

Dated: <u>December 21, 2021</u>       Respectfully submitted,

**Stamoulis & Weinblatt, LLC**

<u>/s/ Stamatios Stamoulis</u>
Stamatios Stamoulis (#4606)
Richard C. Weinblatt (#5080)
800 N. West Street Third Floor
Wilmington, Delaware 19801
Telephone: (302) 999-1540
Email: stamoulis@swdelaw.com
Email: weinblatt@swdelaw.com

James F. McDonough, III (Bar No. 117088, GA)*
Jonathan R. Miller (Bar No. 507179, GA)*
Travis E. Lynch (Bar No. 162373, GA)*
**ROZIER HARDT MCDONOUGH PLLC**
3621 Vinings Slope, Suite 4300
Atlanta, Georgia 30339
Telephone: (470) 480-9505, 9517, 9514
Email: jim@rhmtrial.com
Email: miller@rhmtrial.com
Email: lynch@rhmtrial.com

**ATTORNEYS FOR PLAINTIFF** *Hanger Solutions, LLC*

* admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on this date a true copy of the above document was filed using this Court's ECF System which caused it to be served by electronic mail upon the attorneys of record.

Dated: December 21, 2021

                                                  */s/ Stamatios Stamoulis*
                                                Stamatios Stamoulis (#4606)